```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------X
GOLDRICH OCEAN INTERNATIONAL SHIPPING
LIMITED,

                          Plaintiff,      :

                                          :

          - against -                     :

PAN WORLD LOGISTICS CO., LTD.,            :
PAN STAR SHIPPING PTE LTD. and SHANDONG
FAR EAST MARINE (GROUP) CO. LIMITED,      :

                          Defendants.
-----------------------------------------X
```

**USDS SDNY**
**DOCUMENT**
**ELECTRONICALLY FILED**
**DOC #:** _____
**DATE FILED:** 5|14|09

**MEMORANDUM and**
**ORDER**

08 Civ. 11014 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

On December 18, 2008, pursuant to a verified complaint, plaintiff Goldrich Ocean International Shipping Limited ("Goldrich") procured a Process of Maritime Attachment and Garnishment ("PMAG") from this Court pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims in the amount of $1,358,324.00 against defendants Pan World Logistics Co., Ltd. ("Pan World Ltd."), Pan Star Shipping PTE Ltd. ("Pan Star") and Shangdong Far East Marine (Group) Co. Limited ("Shangdong"). Pan World Logistics Co., Ltd., of Hong Kong[1] ("Pan World Hong Kong"), which claims to be a non-party, asserts

---

[1]  While the non-party refers to itself alternately as "Pan World Logistics Co., Ltd., of Hong Kong," Wanchoo Affadavit of Mar. 26, 2009 ("Wanchoo Aff.") ¶ 2, and "Pan World Logistics Co., Limited (Pan World Hong Kong)," Si Yuan Jiang Declaration of Mar. 23, 2009 ("Jiang Decl.") ¶ 1, the business registration it proffers lists its business name as "Pan World Logistics, Co., Ltd.," the precise name plaintiff listed as a defendant in its verified complaint.  Jiang Decl. Ex. A.

1

that a total of approximately $206,836.54 of its funds were wrongfully restrained by multiple garnishees pursuant to the PMAG in the weeks leading up to January 5, 2009. Jiang Decl. ¶ 14. Presently before this Court is Pan World Hong Kong's Supplemental Rule E(4)(f) motion to vacate the Court's December 18, 2008 Order to the extent it authorizes attachment of Pan World Hong Kong's assets. For the reasons set forth below, Pan World Hong Kong's motion is denied in full.

## BACKGROUND

Plaintiff, the owner of the vessel "Jin Man Yang," alleges that on August 18, 2008 it chartered that vessel to defendant Pan World Ltd. for nine months at a rate of $7,500 per day. Verified Compl. ¶¶ 2, 6, 7. According to Goldrich, Pan World Ltd. stopped making payments under the charter agreement on November 22, 2008 and advised Goldrich on November 28, 2008 that it was terminating the charter agreement. Id. ¶ 10. Plaintiff filed its verified complaint on December 18, 2008, naming Pan World Ltd., Pan Star and Shangdong as defendants and alleging that Pan Star and Shangdong are alter egos of Pan World Ltd.[2] Id. ¶¶ 18-28.

---

[2] Plaintiff commenced arbitration in Hong Kong on February 13, 2008 to resolve the merits of this dispute. Plaintiff's Letter of February 16, 2009.

2

Plaintiff supported its alter ego allegations by appending to its verified complaint evidence that Pan Star made multiple payments to plaintiff on behalf of Pan World Ltd., evidence from Shangdong's website that all three companies are in the same corporate hierarchy and evidence that Pan World and Shangdong operate from the same address. Verified Compl. Exs. 3-5.

## DISCUSSION

Pan World Hong Kong offers three separate arguments in support of vacatur: 1) that plaintiff has not established the requirements of Supplemental Rules B and E; 2) that plaintiff's pleadings fail to satisfy the heightened pleading requirements of Rule E; and 3) that the attachment should be vacated on equitable grounds. Memorandum of Law in Support of the Motion of Pan World Logistics Co., Limited to Vacate the Maritime Attachment ("Pan World Hong Kong Memo.") at 3, 4, 8. We address these arguments in seriatim.

## I. Requirements for Rule B Attachment

To obtain a Rule B attachment, a plaintiff must establish that "1) it has a valid prima facie admiralty claim against the defendant; 2) the defendant cannot be found within the district; 3) the defendant's property may be found within the district; and 4) there is no statutory or maritime law bar to the

3

attachment." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty
Ltd., 460 F.3d 434, 445 (2d Cir. 2006).

Pan World Hong Kong bases its argument on the first of
these requirements, maintaining that plaintiff has not made out
a prima facie admiralty claim against it because Pan World Hong
Kong is neither a party to the charter contract nor an alter ego
of the contracting party. Pan World Hong Kong Memo. at 3, 4.
Pan World Hong Kong claims that the contracting party was a Pan
World Logistics, Co., Ltd. based in Japan but that Pan World
Hong Kong is a "totally separate" entity and that it is merely
"by coincidence" that the business names of the two companies
are identical. Pan World Hong Kong Memo. at 7; Zhang Xiaodan
Reply Declaration of April 24, 2009 ("Zhang Reply Decl.") ¶ 22;
Jiang Si Yuan Reply Declaration of April 24, 2009 ("Jiang Reply
Decl.") ¶ 14. Yet the record strongly suggests that more than
mere coincidence is at work.

First, as plaintiff points out, Si Yuan Jiang, a director
of Pan World Hong Kong, admits to being a shareholder of both
Pan World Ltd. and Pan World Hong Kong.[3] Second, the alleged
non-party acknowledges that it changed its name in November 2007
to "Pan World Logistics Co., Ltd." from "Jason J. Logistics
Company Limited" and while that entity appears to be registered

---

[3] Jiang states that he owns 80 percent of Pan World Hong Kong, 30
percent of Pan World Japan and 25.5 percent of Shandong. Jiang Decl. ¶ 17.

4

in Hong Kong, its principal place of business is in Dalian, China. Zhang Reply Decl. ¶¶ 7, 18; Jiang Decl. Ex. A. Thus, Pan World Hong Kong, while disclaiming any connection to Pan World Ltd., a company with which it concedes it has common shareholders, recently and intentionally adopted that company's precise legal name.

Third, plaintiff has submitted the business card of Lui Min Qiang of "Pan World Logistics Co., Ltd.," which lists the addresses of seven of the company's offices, including the "Japan Office" and the "Dalian Office," in China. Verified Compl. Ex. 5. Given Pan World Hong Kong's admission that it has its principal place of business in Dalian, China, this is further evidence that, rather than being "totally separate" from Pan World Ltd. as claimed, Pan World Hong Kong is the Dalian branch of Pan World Ltd.

Fourth, while Pan World Hong Kong asserts that the true party to the charter agreement is "Pan World Logistics Co., Ltd." of Japan and that that entity has a "valid business address" and is "not a shell," plaintiff offers compelling evidence to the contrary. Zhang Reply Decl. ¶ 21. Plaintiff has submitted the report of a Japanese investigator who concluded that a completely unrelated company is doing business at the address listed for the Japan Office of Pan World

Logistics Co., Ltd.[4]  Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Vacate Maritime Attachment[5] ("Opposition Memo.") Ex. 1.

In short, the record gives this Court little confidence in Pan World Hong Kong's representations that it is "totally separate" from the contracting party and that it shares the exact same legal name as Pan World Ltd. by "coincidence." Under Aqua Stoli, plaintiff need only establish a prima facie case against Pan World Hong Kong to justify Rule B attachment. 460 F.3d 434, 445 (2d Cir. 2006).  We find that plaintiff has done so.  We need not address the other three requirements for Rule B attachment that are listed in Aqua Stoli as Pan World Hong Kong does not contest that they are present.

_____

[4]  One final inconsistency that bears mention is evidence that defendant Pan Star made payments for the charter of the Jin Man Yang on two occasions: $224,985 on August 8, 2008 and $113,085 on August 27, 2008.  Verified Compl. Ex. 3.  While resolution of the instant motion does not require this Court to determine Pan Star's liability, if any, on the charter agreement, we note that the payment of one company's debt by another is a frequently mentioned factor in alter ego analysis.  See, e.g., Tide Line, Inc. v. Eastrade Commodities, Inc., No. 06 Civ. 1979(KMW), 2006 U.S. Dist. LEXIS 95870, at *45 (S.D.N.Y. Aug. 15, 2006).

[5]  We think plaintiff may properly rely on allegations in submissions other than the verified complaint to make a prima facie showing.  Although this is an "open question," Brave Bulk Trans. Ltd. v. Spot on Shipping Ltd., No. 07 Civ. 4546(CM), 2007 WL 3255823, at *6 (S.D.N.Y. Oct. 30, 2007), we believe that ignoring a record containing such submissions would not serve the interests of judicial efficiency.  Vacating attachments in the face of substantial new allegations would simply force plaintiffs to file a duplicate action after its initial action is dismissed, exalting form over substance and allowing potentially validly attached funds to escape the jurisdiction.

## II. **Rule E Pleading Requirements**

Pan World Hong Kong argues that plaintiff's pleadings are not sufficient to meet the heightened pleading standard of Supplemental Rule E(2)(a), which requires that a complaint in a case involving attachment "state the circumstances from which the claim arises with such particularity that the defendant or claimant will be able, without moving for a more definite statement, to commence an investigation of the facts and to frame a responsive pleading." Pan World Hong Kong Memo. at 4; Fed. R. Civ. P., Adm. Supp. R. E(2)(a).

Pan World Hong Kong further argues that "the need for such heightened pleading requirements is dramatically magnified when the underlying claim rests upon *alter ego* allegations." Pan World Hong Kong Memo. at 5 (emphasis in original). However, as detailed in Discussion Section I, supra, in this case plaintiff has made out a prima facie case that Pan World Hong Kong is indistinguishable from or a component (i.e., an office or branch) of Pan World Ltd. This opinion has not proceeded on an alter ego theory of liability.

Moreover, even assuming that we had not found that plaintiff's naming of Pan World Logistics Co., Ltd. as a defendant is sufficient to attach assets of "Pan World Logistics Co., Ltd. of Hong Kong," Pan World Hong Kong can hardly argue it has been unable "to commence an investigation of the facts and

7

to frame a responsive pleading" under Supplemental Rule E(2)(a).
First, plaintiff submitted a detailed verified complaint,
including as exhibits the charter contract at issue,
documentation of payments made by Pan Star on the contract and
the aforementioned business card and website printout.  Second,
taking Pan World Hong Kong's representations at face value, Mr.
Jiang is at the same time a director and majority shareholder of
Pan World Hong Kong, as well as a large shareholder of Pan World
Ltd. and Shandong.  Due to the detail offered in the verified
complaint and the access Mr. Jiang would have to the documents
and parties involved in the transaction,[6] Pan World Hong Kong was
certainly in a position to investigate the facts and frame a
responsive pleading.  See, e.g., Wajilam Exports (Singapore)
PTE. Ltd. v. ATL Shipping Ltd., 475 F.Supp.2d 275, 281 (S.D.N.Y.
2006) (J. Lynch).

For the reasons set forth above, we find that plaintiff has
met the Supplemental Rule E(2)(a) pleading standard.

---

[6] Shandong's website includes a news release that on August 30 (of
2008, presumably) Si Yuan Jiang, "CEO & Managing Director [of Shandong] went
to Huangdao Bay port and boarded the 'JinManYang' vessel . . . asked about
detail of the operation, management of the ship and crew's daily life . . .
[and] inspected the actual operational situation."  Opposition Memo, Ex. 2.
If Mr. Jiang enjoyed such privileged access to the vessel at issue, he
presumably enjoys similar access to the personnel and documentation involved
in the charter arrangement for that same vessel.

## III. **Equitable Grounds for Vacatur**

Pan World Hong Kong's final argument is that the Court should exercise its "'inherent authority to vacate an attachment upon a showing of any improper practice or a manifest want of equity on the part of plaintiff.'" Pan World Hong Kong Memo at 8 (quoting Maersk, Inc. v. Neewra, Inc., 443 F.Supp.2d 519, 528 (S.D.N.Y. 2006)(J. Casey)). Yet all Pan World Hong Kong alleges to be improper is a statement by plaintiff counsel that reads "Please note that we have no intention of restraining funds that do not belong to the Pan World entity that is the subject of our client's claim" and plaintiff's subsequent refusal to release the attached funds. Email from Plaintiff's Counsel to Pan World Hong Kong's Counsel of January 19, 2009, Jiang Decl. Ex. G. Plaintiff's refusal to accept Pan World Hong Kong's representations at face value hardly involves an "improper practice" or "manifest want of equity," and we accordingly refuse to vacate the attachment on equitable grounds.

## CONCLUSION

For the foregoing reasons, we deny in full Pan World Hong Kong's motion to vacate the attachment of its funds.

**SO ORDERED.**

Dated:     New York, New York
           May 13, 2009

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE

Copies of the foregoing Order have been mailed on this date to the following:

**Attorney for Plaintiff**
Kevin J. Lennon, Esq.
Lennon, Murphy & Lennon
420 Lexington Avenue, Suite 300
New York, NY 10170

**Attorney for Pan World Hong Kong**
Rahul Wanchoo, Esq.
The Law Offices of Rahul Wanchoo
350 Fifth Avenue, 59th Floor
New York, NY 10118

10